UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ASSOCIATION CONCERNED OVER RESOURCES AND NATURE, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. _____ ) |
| SMELTER SERVICE CORPORATION, | ) ) ) |
| Defendant. | ) |

## **COMPLAINT**

Plaintiff Association Concerned Over Resources and Nature, Inc., by and through counsel, allege as follows:

### **NATURE OF THE CASE**

1. This is a citizen's suit, brought pursuant to Section 505(a)(1) of the federal Clean Water Act ("CWA" or "the Act"), as amended, 33 U.S.C. § 1365(a)(1), to address violations of the Act by Defendant Smelter Service Corporation ("Smelter") arising out of its operation of an aluminum smelting and refining plant located in Maury County, Tennessee ("Smelter facility"). Defendant Smelter has, in its operation of its facility, repeatedly violated, and continues to violate, the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to 33 U.S.C. § 1342 governing operation of the facility. More specifically, Defendant Smelter has violated the CWA by discharging non-contact cooling water/condensate and industrial storm water in violation its NPDES Permit, as well as the Tennessee Water Quality Control Act ("TWQCA") and Tennessee Water Quality Standards.

Smelter has also violated its NPDES Permit and the CWA by failing to comply with the requirements pertaining to its Storm Water Pollution Prevention Plan. Plaintiff seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees, for Defendant Smelter's repeated and ongoing violations of the CWA and further seeks to compel compliance with Smelter's NPDES Permit and the Act.

## JURISDICTION

2. This Court has subject matter jurisdiction over the CWA claims set forth in this Complaint pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

3. Plaintiff has complied with the pre-suit notice provisions of the CWA. Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff, on August 23, 2010, mailed a notice of intent to file suit under the CWA to address the violations at the Smelter facility to Defendant Smelter, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Director of the Tennessee Department of Environment and Conservation ("TDEC"), and the United States Attorney General ("August Notice"). [Attached as Exhibit "A" and incorporated by reference herein]. The August Notice complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A. More than 60 days have passed since the August Notice was served on Defendant Smelter and these agencies.

4. Neither EPA nor TDEC have commenced nor are they diligently prosecuting a civil or criminal action in a court of the United States to redress the violations of the CWA by Defendant Smelter. In addition, TDEC has not commenced and is not diligently prosecuting a civil or criminal action in a state court to redress the violations of the Act by Defendant Smelter

2

under a state enforcement scheme comparable to the enforcement provisions of the Act. Tennessee's water pollution enforcement scheme is not comparable to the enforcement provisions of the Act. *Jones v. City of Lakeland*, 224 F.3d 518 (6th Cir. 2000).

5. In addition, EPA has not commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), to redress the violations of the CWA by Defendant Smelter. Furthermore, Plaintiff served notice of this citizen suit prior to any administrative penalty action taken by TDEC with regard to any of the violations claimed in this suit, and this suit is being filed prior to the expiration of 120 days from the service of Plaintiff's August notice on Defendants. Therefore, pursuant to 33 U.S.C. § 1319(g)(6)(B)(ii), the limitations on citizen suits contained in 33 U.S.C. § 1319(g)(6)(A) do not apply to this suit.

6. Plaintiffs will, immediately upon receipt of a file stamped copy of this Complaint, mail a copy of this Complaint to the Administrator of the Environmental Protection Agency, the Regional Administrator of the EPA Region in which the violations are alleged to have occurred, and the Attorney General of the United States.

7. Venue is appropriate in the Middle District of Tennessee, pursuant to Section 505(c) of the CWA, 33 U.S.C. § 1365(c), because the source of the violations is located within this judicial district.

## PARTIES

8. Plaintiff Association Concerned Over Resources and Nature, Inc. ("ACORN") is a nonprofit corporation organized under the laws of Tennessee with its principal office in Columbia, Tennessee. ACORN was organized in or about 2000 to, among other reasons: to educate the public about the threats to the environment and public health in Mount Pleasant; to advocate for reduction in water pollution and air pollution in Mount Pleasant; to educate the

public about land use decisions and their impacts on the environment, public health, community character and property values in Mount Pleasant; and to advocate for more sustainable land use decisions in Mount Pleasant. ACORN has members who own property and reside downstream from the location in the unnamed tributary of Sugar Creek into which Smelter discharges non-contact cooling water/condensate and industrial stormwater. Members of ACORN also fish and recreate downstream from the Smelter discharge(s). Members of ACORN have been and will be directly and substantially injured in their use and enjoyment of their property and in their recreational and aesthetic enjoyment of waters downstream from the Smelter discharge as a direct result of Smelter's violations of the CWA. The relief sought in this case would provide redress for these injuries. Additionally, because these injuries are being caused by pollution of waters of the United States, these injuries fall within the zone of interests protected by the CWA.

9. Plaintiff ACORN is a "citizen" within the meaning of 33 U.S.C. §§ 1365(g) and 1365(a).

10. Defendant Smelter Service Corporation ("Smelter") is a for profit corporation organized under the laws of Tennessee with its principal office located in Mount Pleasant, Tennessee. The principal address of Smelter is 400 Arrow Mines Road, Mount Pleasant, TN, 38474. The registered agent for service of process is Jim G. Barrier, 400 Arrow Mines Road, P.O. Box 432, Mount Pleasant, Tennessee, 38474.

11. Defendant Smelter is a "person" within the meaning of 33 U.S.C. § 1362(5) and 1365(a)(1).

## STATUTORY BACKGROUND

12. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States unless the discharge

4

is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits such discharges not authorized by, or in violation of the terms of, a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

13. The State of Tennessee has been delegated the authority to implement the permitting programs of the Act by EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b). TDEC is the water pollution control agency for purposes of the Act, and has drafted regulations pursuant to that authority implementing the Act's permitting programs within the State of Tennessee. *See* Tenn. Code Ann. § 69-3-105(h)(1).

14. A violation of an NPDES permit issued by TDEC is a violation of the Tennessee Water Quality Control Act of 1977, Tenn. Code Ann. §§ 69-3-101, *et seq.* ("TWQCA"), TDEC rules, including Chapter 1200-4-5, and the federal Clean Water Act.

15. Pursuant to Tenn. Code Ann. § 69-3-105(a)(1), all waters of the State of Tennessee have been classified by the Tennessee Water Quality Control Board for suitable uses.

16. Chapter 1200-4-3 of the Rules of the Tennessee Department of Environment and Conservation set forth the General Water Quality Criteria for all waters of the State of Tennessee. Rule 1200-4-3.03 provides the water quality criteria for water uses, and Rule 1200-4-3.03(3) provides, in pertinent part:

> (3) Fish and Aquatic Life
>
> > (b) pH – The pH value shall not … be outside the following ranges: 6.0-9.0 in wadeable streams and 6.5-9.0 in larger rivers, lakes, reservoirs, and wetlands.
> >
> > (d) Turbidity, Total Suspended Solids, or Color – There shall be no turbidity, total suspended solids, or color in such amounts or of such character that will materially affect fish and aquatic life …

5

(e) Temperature - …The temperature of the water shall not exceed 30.5°C
….

| (g) Toxic Substances - | CMC (ug/L) | CCC (ug/L) |
|---|---|---|
| Cyanide | 22 | 5.2 |
| Cadmium | 2.0 | .25 |
| Copper | 13 | 9.0 |
| Lead | 65 | 2.5 |
| Zinc | 120 | 120 |

(h) Other Pollutants – The waters shall not contain other pollutants that will be detrimental to fish or aquatic life.

(k) Nutrients – The waters shall not contain nutrients in concentrations that stimulate aquatic plant and/or algae growth to the extent that aquatic habitat is substantially reduced and/or the biological integrity fails to meet regional goals. Additionally, the quality of downstream receiving waters shall not be detrimentally affected.

17. A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms of NPDES permits. 33 U.S.C. § 1365(f).

## GENERAL ALLEGATIONS

18. At all times relevant hereto, Defendant Smelter has operated an aluminum smelting and refining facility ("Smelter facility") located in the City of Mount Pleasant, Maury County, Tennessee. The Smelter facility is currently governed by the terms and conditions contained in NPDES Permit No. TN0078573 ("NPDES Permit"), which authorizes Defendant Smelter to discharge non-contact cooling water/condensate from Outfall 001 and treated industrial storm water from Outfalls SW1 and SW2 into an unnamed tributary of Sugar Creek.

19. The unnamed tributary to Sugar Creek, as well as Sugar Creek, are waters of the State of Tennessee, and "waters of the United States" as that term is used in the CWA and as it has been interpreted by the federal courts.

20. Sugar Creek and its tributaries, including the unnamed tributary which receives the discharge(s) of cooling water/condensate and treated industrial storm water from the Smelter facility, are designated by the State of Tennessee for use as, amongst other uses, fish and aquatic life, recreation, irrigation, livestock watering and wildlife.

21. The unnamed tributary to Sugar Creek and Sugar Creek are continuously flowing streams forming geographic features depicted on United States Geological Survey topographical maps.

22. Discharge of pollutants into the unnamed tributary to Sugar Creek can significantly affect the chemical, physical, and biological integrity of navigable in fact waters downstream.

23. Part I.A. ("Effluent Limitations and Monitoring Requirements") of Smelter's NPDES Permit provides numeric limits for certain effluent characteristics in regards to Smelter's discharge of non-contact cooling water from Outfall 001. Part I.A. also provides additional monitoring requirements and conditions applicable to Smelter's discharge of industrial storm water from Outfalls SW1 and SW2. Part I.A. of provides:

> There shall be no distinctly visible solids, scum, foam, oil slick or materials which form slimes, bottom deposits or sludge banks of such size or character that may be detrimental to fish and aquatic life. The wastewater discharge must not cause an objectionable color contrast in the receiving stream.
>
> The wastewater discharge shall not contain pollutants in quantities that will be hazardous or otherwise detrimental to humans, livestock, wildlife, plant life, or fish and aquatic life in the receiving stream.

7

> Sludge or any other material removed by any treatment works must be disposed of in a manner, which prevents its entrance into or pollution of any surface of subsurface waters.

(hereinafter "Additional Conditions").

24. As demonstrated by Defendant Smelter's own certified Discharge Monitoring Reports ("DMRs") submitted to TDEC, Smelter has, between January of 2009 and June of 2010, consistently violated the above-referenced effluent limitations and Additional Conditions contained in its NPDES Permit, as well as the TWQCA and Tennessee Water Quality Standards, arising out of its discharge(s) of non-contact cooling water/condensate and industrial storm water.

25. Part V of Smelter's NPDES Permit requires that Smelter " … develop, document and maintain a Storm Water Pollution Prevention Plan ("SWPPP") …," and Attachment 3 of the NPDES Permit sets out the SWPPP requirements. Because Smelter's NPDES Permit incorporates the requirement of a SWPPP, any violation of the SWPPP is also a violation of the NPDES Permit and the CWA.

26. Attachment 3 of Smelter's NPDES Permit requires that the SWPPP include a signed Non-Stormwater Discharge certification. Smelter's most recently revised SWPPP, dated September of 2005, fails to contain this signed certification.

27. Page 2 of Smelter's revised SWPPP provides that the SWPPP will be amended by Smelter when "[T]he plan has proven to be ineffective in eliminating or significantly reducing sources pollutants." Despite the numerous violations demonstrated by Smelter's own certified DMRs, Smelter has failed to amend the revised SWPPP.

28. Part III. E of Smelter's NDPES Permit requires Smelter to develop and implement a Biological Monitoring and Abatement ("BMAP") Plan to define the biological impact of its

8

storm water discharges on receiving streams and to determine appropriate abatement measures/schedules for correction.

29. Smelter prepared a BMAP Baseline Survey Investigation dated October 26, 2009. This investigation showed that sampling events conducted on May 13, 2009, and August 28, 2009, demonstrated a measureable difference in biological diversity between samples conducted upstream of Smelter's storm water discharge and samples conducted downstream of Smelter's storm water discharge.

30. Smelter prepared a final BMAP report dated November 24, 2009. Page 6 of this report states:

> The Preliminary Report concluded that there was a measurable difference in the biological diversity between the samples conducted upstream versus those conducted downstream of the [Smelter] storm water discharge … In addition, bioessays were conducted with storm water samples and the tests indicated that the samples were chronically toxic to aquatic test organisms.

31. The results of the BMAP reports referenced above constitute violations of the TWQCA, Tenn. Code Ann. § 69-3-108(b) and § 69-3-114, Tennessee Water Quality Standards, the Additional Conditions relating to storm water discharges contained in Smelter's NPDES Permit, and the CWA.

32. The August Notice, which is attached hereto as Exhibit "A," sets out a detailed list of violations by Defendant Smelter of its NPDES Permit, as well as the TWQCA and Tennessee Water Quality Standards, between January of 2009 and June of 2010 in regards to its discharge(s) of cooling water/condensate and industrial storm water. The August Notice and the detailed list of violations are incorporated by reference as if fully set forth herein.

33. The violations listed in the August Notice relating to Defendant Smelter's violations of its NPDES Permit, the TWQCA and the Tennessee Water Quality Standards are continuing and ongoing, or are likely to recur, as of the date this Complaint is being filed.

34. Prior to receiving coverage under NPDES Permit No. TN0078573, Smelter was covered under the Tennessee General NPDES Permit for Storm Water Discharges Associated with Industrial Activities, Permit No. TNR053301 ("TMSP General Permit").

35. On January 15, 2007, and March 1, 2007, Smelter conducted storm water sampling events for Outfalls SW1 and SW2. As set forth in more detail in Plaintiff's August Notice, which is attached hereto as Exhibit "A" and incorporated by reference herein, the results of these sampling events showed violations of the terms and conditions of the TMSP General Permit, the TWQCA and Tennessee Water Quality Standards. These violations are also violations of the Additional Conditions contained in NPDES Permit No. TN007857, and thus are continuing, or are likely to recur, as of the date of this Complaint being filed.

## CLAIMS

### COUNT 1: VIOLATION OF THE TERMS OF NPDES PERMIT NO. TN0078573 IN VIOLATION OF THE CLEAN WATER ACT

36. Paragraphs 1-35 of this Complaint are hereby realleged and incorporated by reference herein.

37. As set forth in Paragraph 24 of this Complaint and the August Notice attached hereto and incorporated by reference herein, Defendant Smelter has violated and Sections 301(a) and 402 of the CWA, 33 U.S.C§§ 1311(a) and 1342, by repeatedly violating the effluent limitations and Additional Conditions contained in its NPDES Permit, as well as the TWQCA and Tennessee Water Quality Standards, arising out of its discharge(s) of cooling

water/condensate and industrial storm water from the Smelter facility into the unnamed tributary to Sugar Creek.

38. As set forth in Paragraphs 25-27 of this Complaint and the August Notice attached hereto and incorporated by reference herein, Defendant Smelter has violated the terms and conditions of its NPDES Permit by failing to sign the Non-Stormwater Discharge certification in its revised SWPPP and by failing to amend the SWPPP as required.

39. As set forth in Paragraphs 28-31 of this Complaint and the August Notice attached hereto and incorporated by reference herein, Defendant Smelter's BMAP reports demonstrate that Smelter has violated the Additional Conditions relating to storm water discharges contained in Part I.A. of its NPDES Permit, as well as the TWQCA and Tennessee Water Quality Standards.

40. Defendant Smelter should be subject to an enforcement order or injunction ordering Mount Pleasant to cease its violations of NPDES Permit No. TN0078573.

41. Defendant Smelter should be subject to the assessment of civil penalties for these permit violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d) and 1365.

42. For the purpose of assessing the maximum penalty which Defendant Smelter is liable, each day that Smelter has violated NPDES Permit No. TN0078573 constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d), for each day on which it has occurred or will occur after the filing of this Complaint.

## COUNT 2: VIOLATION OF THE TERMS OF NPDES PERMIT NO. TNR053301 IN VIOLATION OF THE CLEAN WATER ACT

43. Paragraphs 1-42 of this Complaint are hereby realleged and incorporated by reference herein.

44. As set forth in Paragraph 35 of this Complaint and in the August Notice attached hereto and incorporated by reference herein, Defendant Smelter has violated and Sections 301(a) and 402 of the CWA, 33 U.S.C§§ 1311(a) and 1342, by violating the terms and conditions of the TMSP General Permit as well as the TWQCA and Tennessee Water Quality Standards.

45. These violations of the TMSP General Permit are also violations of the Additional Conditions contained in NPDES Permit No. TN0078573, as well as the TWQCA and Tennessee Water Quality Standards.

46. Defendant Smelter should be subject to an enforcement order or injunction ordering Mount Pleasant to cease its violations of NPDES Permit No. TN0078573.

47. Defendant Smelter should be subject to the assessment of civil penalties for these permit violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d) and 1365.

48. For the purpose of assessing the maximum penalty which Defendant Smelter is liable, each day that Smelter has violated NPDES Permit No. TN0078573 constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d), for each day on which it has occurred or will occur after the filing of this Complaint.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

a. Enter a declaratory judgment that Defendant Smelter has violated and is in violation of the CWA, 33 U.S.C. §§ 1311(a) and 1342;

b. Order Defendant Mount Pleasant to comply with all effluent limitations and other terms and conditions of coverage under NPDES Permit No. TN0078573;

c. Order Defendant Smelter to pay civil penalties of up to thirty-seven thousand five hundred dollars ($37,500) per day for each day of each violation of the CWA set out in this Complaint, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. § 1319(d) and 1365(a);

d. Award Plaintiff its costs, including reasonable attorney and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

e. Grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted, this the 30th day of December, 2010.

*/s/ Gary A. Davis*
Gary A. Davis (BPR No. 009766)
James S. Whitlock (N.C. Bar No. 34304)
*Admission Requested Pro Hac Vice*
GARY A. DAVIS & ASSOCIATES
P.O. Box 649
61 North Andrews Avenue
Hot Springs, NC 28743
(828) 622-0044
(828) 622-7610
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

*/s/ Alan Stuart Graf*
Alan Stuart Graf (BPR No.24908)
Alan Stuart Graf, PC
316 Second Rd.
Summertown, TN 38483
(931) 964-3123
(931) 964-3127
alangraf@aracnet.com

13

*Attorneys for Plaintiffs*